# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| SHORT CREEK DEVELOPMENT, LLC; AND SHORT CREEK ADVISORS, LLC, EACH A DAUGHTER SERIES OF SHORT CREEK CAPITAL, LLC, A MISSOURI SERIES LIMITED LIABILITY COMPANY<br><br>    Plaintiff,<br>vs.<br><br>MFA INCORPORATED, A MISSOURI NON-STOCK COOP<br><br>    Defendant. | Case No.: _____<br><br>COMPLAINT FOR:<br><br>1) ABATEMENT OF IMMINENT AND SUBSTANTIAL ENDANGERMENT PURSUANT TO RCRA – 42 U.S.C. §6972(a)(1)(B)<br><br>2) COST RECOVERY PURSUANT TO CERCLA – 42 U.S.C. §9607(a)<br><br>3) DECLARATORY JUDGMENT – 42 U.S.C. §9613(g)(2) |

Plaintiffs, Short Creek Development, LLC (hereinafter "SCD") and Short Creek Advisors, LLC (hereinafter "SCA"), each a Daughter Series of Short Creek Capital, LLC, a Missouri series limited liability company (collectively referred to hereinafter as "Plaintiffs"), allege as follows:

## I. STATEMENT OF THE CASE

1. Plaintiffs bring the instant action against Defendant, MFA Incorporated, a Missouri Non-Stock Coop (hereinafter "MFA"):

- requiring MFA to immediately address an imminent and substantial endangerment pursuant to Section 7002(a) of the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976, as further amended by the Hazardous and Solid Waste Amendments of 1984, 42 U.S.C. §6972(a) (hereinafter "RCRA");

- for recovery of response costs pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, Pub. L. No. 96-510, 94 Stat. 2767 [codified as amended at 42 U.S.C. §§ 9601-9675 (2013)], 42 U.S.C. §9607(a) (hereinafter "CERCLA"); and

- for declaratory judgment pursuant to CERCLA §113(g)(2), 42 U.S.C. §9613(g)(2).

2. Plaintiffs' RCRA claim seeks, *inter alia*, mandatory, prospective injunctive relief to redress and abate an imminent and substantial endangerment existing at and in the vicinity of a

facility located at 420 South Malang Road, Joplin, Jasper County, Missouri 64801 (hereinafter, the "Site").

3. Plaintiffs' CERCLA claim seeks, *inter alia*, entry of lump sum judgement against MFA in an amount equal to the unreimbursed costs of response that Plaintiffs have incurred, and interest on such response costs, in connection with the releases or threatened releases of hazardous substances at or from the Site.

4. Plaintiffs' Declaratory Judgment claim seeks, *inter alia*, a declaration that MFA is jointly and severally liable to Plaintiffs for the costs of response Plaintiffs have incurred and for any further response costs Plaintiffs incur in the future to address a release and/or threatened release of hazardous substances at or from the Site.

## II. BACKGROUND

5. The roughly 160-acre Site, currently owned by SCD, is located approximately 6.5 miles west of Joplin, MO; and generally bounded on the south by US Route 66, on the west by State Line Avenue, on the east by Malang Road, and on the north by West Belle Center Road.

6. MFA owned the Site beginning on or about October 2, 1953, and continuously through on or about April 1, 1957 (hereinafter, "MFA Ownership").

7. From on or about October 2, 1953, and continuously through on or about April 1, 1957, MFA operated the Site (hereinafter "MFA Operations").

8. During the MFA Ownership and MFA Operations, MFA owned and operated a plant foods facility adjacent to the Site (the "MFA Plant"). The MFA Plant manufactured phosphoric acid through the mixing of phosphate rock with sulfuric acid ("MFA Manufacturing Process"). The MFA Manufacturing Process resulted in the production of phosphoric acid for sale as a fertilizer component; as well as gypsum slurry waste commonly referred to as Phosphogypsum.

9. During the MFA Ownership and MFA Operations, the MFA Plant and MFA Manufacturing Process generated significant quantities of Phosphogypsum which was discharged, disposed and discarded at the Site via conveyor, piping or other means of conveyance; thereby creating a Phosphogypsum stack on the Site (hereinafter the "Gyp Stack"), which covered and altered the natural flow of Short Creek, a tributary of southwest Missouri's Spring River.

10. Throughout the MFA Ownership and the MFA Operations, MFA utilized the Site as a repository or disposal facility for the Phosphogypsum waste generated at the MFA Plant by the MFA Manufacturing Process.

11. On or about March 21, 1957, MFA and Consumers Cooperative Association, a Kansas nonprofit cooperative association later known as Farmland Industries Inc., formed Farmers Chemical Company, a Kansas nonprofit cooperative association (hereinafter "FCC"), to take over the MFA Manufacturing Process at the MFA Plant.

12. On or about April 1, 1957, MFA conveyed title to the Site to FCC. FCC continued its use of the Site as a repository or disposal facility for the Phosphogypsum waste until in or about 1971 when the previously implemented MFA Manufacturing Process was changed to eliminate the generation of Phosphogypsum waste.

13. On or about August 31, 1999, FCC was merged into Farmland Industries, Inc. (hereinafter "FI").

14. In or about May 2002, FI and certain of its affiliates (collectively "Debtors) commenced Chapter 11 bankruptcy proceedings before the United States Bankruptcy Court for the Western District of Missouri ("Bankruptcy Court"), Case No. 02-50557. The Debtors' Second Amended and Restated Plan of Liquidation (the "Plan) was confirmed by Order of the Bankruptcy Court on or about December 19, 2003.

15. Pursuant to the Plan, and on or about April 30, 2004, by order of the Bankruptcy Court, the FI Missouri Remediation Trust (the "FIMRT") was formed as a Qualified Settlement Fund pursuant to Internal Revenue Code §468(b) to address, *inter alia*, the Phosphogypsum, hazardous substances, hazardous waste and/or solid waste in, at, around, underlying and emanating from the Site.

16. The initial corpus of the FIMRT was comprised of, *inter alia*, title to the Site and remediation funds in the amount of Five Million Five Hundred Nine Thousand Eight Hundred and Eight Dollars ($5,509,808). Pursuant to the FIMRT's terms, and on April 30, 2006, the FIMRT's grantor contributed an additional One Million Eight Hundred Eighty-Two Thousand Seven Hundred and Eighteen Dollars ($1,882,718) to the corpus of the FIMRT.

17. From its inception through on or about December 31, 2021, the FIMRT incurred and paid approximately $7.75 million as necessary costs of response to address the

Phosphogypsum, hazardous substances, hazardous waste and/or solid waste released, discharged to and disposed of at the Site by MFA during the MFA Ownership and the MFA Operations.

18. On or about September 17, 2021, SCD purchased the Site from the FIMRT. Pursuant to the Real Estate Purchase Agreement governing this transaction, the FIMRT executed an Assignment of Claims Agreement in favor of SCA. Accordingly, SCA is the holder of all right, title and interest in and to the Assigned Claims.

19. On or about March 23, 2022, the Missouri Department of Natural Resources (the "MDNR") provided counsel for Plaintiffs and MFA a [Proposed] Administrative Order on Consent (the "Draft AOC") pursuant to the Missouri Solid Waste Management Law (the "MSWML"), RSMo. §§ 260.200 through 260.345. In addition to suggesting Findings of Fact and Conclusions of Law pursuant to MDNR's MSWML authority set forth at RSMo. §§ 260.225 and 260.349, the Draft AOC names both SCD and MFA as "Respondents." A copy of the Draft AOC is attached hereto as Exhibit A.

### III. JURISDICTION

20. This Court has jurisdiction over the subject matter of Plaintiffs' claim seeking relief for the imminent and substantial endangerment which may be present at the Site as authorized by Congress in the Citizen Suit provisions pursuant to RCRA §7002(a)(1)(B), 42 U.S.C. §6972(a)(1)(B), and pursuant to 28 U.S.C. §1331 as involving questions arising under federal law.

21. This Court has jurisdiction over the subject matter of the Plaintiffs' claim respecting cost recovery as authorized by Congress in CERCLA §107(a)(4)(B), 42 U.S.C. §9607(a)(4)(B), and pursuant to 28 U.S.C. §1331 as involving questions arising under federal law.

22. This Court has jurisdiction over the subject matter of Plaintiffs' claims respecting declaratory judgment as authorized by Congress in CERCLA §113(g)(2), 42 U.S.C. §9613(g)(2), and pursuant to 28 U.S.C. §1331 as involving questions arising under federal law.

23. Plaintiffs have satisfied all jurisdictional prerequisites to filing this action in that all applicable notice requirements under RCRA §7002(b)(1)(A), 42 U.S.C. §6972(b)(1)(A); and CERCLA §113(g)(2), 42 U.S.C. §9613(g)(2) have been met.

### IV. VENUE

24. Because the Site is located in Jasper County, State of Missouri, within this Court's district, and because the endangerments complained of herein have occurred there and the discharge and disposal of Phosphogypsum, hazardous substances, hazardous waste and/or solid

waste into the environment and related wrongful acts complained of herein took place at the Site, venue is appropriate in this Court pursuant to RCRA §7002(a), 42 U.S.C. §6972(a); CERCLA §113(b), 42 U.S.C. §9613(b); and Local Rule 3.2.

## V. THE PARTIES

25. SCD is the current owner of the Site.

26. SCA is the owner of all right, title and interest in and to the Assigned Claims pursuant to the Assignment Agreement.

27. MFA Incorporated, a Missouri Non-Stock Coop, was the owner of the Site beginning on or about October 2, 1953, and continuously thereafter through on or about April 1, 1957; and operator of the Site beginning on or about October 2, 1953, and continuously thereafter through on or about April 1, 1957.

## VI. DEFINITIONS

28. Abandoned: As used in this Complaint, the term "abandoned" shall mean disposed of; burned or incinerated; or accumulated, stored, or treated (but not recycled) before or in lieu of being abandoned by being disposed of, burned or incinerated as provided in 40 C.F.R. §261.2.

29. Assignment Agreement: As used in this Complaint, the term Assignment Agreement shall mean that certain Assignment of Claims Agreement by and between SCA and the FI Missouri Remediation Trust, dated August 23, 2021, incorporated as though fully set forth herein by this reference, and attached hereto as Exhibit B.

30. Assigned Claims: As used in this Complaint, the term "Assigned Claims" shall have the meaning set forth in the Assignment Agreement.

31. Discharge: As used in this Complaint, the term "discharge" shall mean the accidental or intentional spilling, leaking, pumping, pouring, emitting, emptying, or dumping of hazardous waste into or on any land or water as provided in 40 C.F.R. §260.10.

32. Discarded: As used in this Complaint, the term "discarded" shall mean any material which is abandoned or considered inherently waste-like as provided in 40 C.F.R. §261.2.

33. Disposal: As used in this Complaint, the term "disposal" shall mean the discharge, deposit, injection, dumping, spilling, leaking or placing of any Hazardous Waste or Solid Waste into or on any land or water so that such Hazardous Waste or Solid Waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including groundwater, as provided in 42 U.S.C. §6903(3).

34. Facility: As used in this Complaint, the term "facility" shall mean all contiguous land, and structures, other appurtenances and improvements on land used for treating, storing, or disposing of hazardous waste as provided in 40 C.F.R. §260.10.

35. Generator: As used in this Complaint, the term "generator" shall mean any person, by site, whose act or process produces hazardous waste identified or listed in 40 C.F.R. §261, or whose act first causes a hazardous waste to become subject to regulation as provided in 40 C.F.R. §260.10.

36. Hazardous Substance: as used in this Complaint, the term "hazardous substance" shall have the meaning set forth in CERCLA §101(14), 42 U.S.C. §9601(14):

(A) any substance designated pursuant to section 311(b)(2)(A) of the Federal Water Pollution Control Act [33 U.S.C. 1321(b)(2)(A)];

(B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title;

(C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C. 6921];

(D) any toxic pollutant listed under section 307(a) of the Federal Water Pollution Control Act [33 U.S.C. 1317(a)];

(E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C. 7412]; and

(F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 7 of the Toxic Substances Control Act [15 U.S.C. 2606].

37. Hazardous Waste: As used in this Complaint, the term "hazardous waste" shall have the meaning set forth in RCRA §1003(5), 42 U.S.C. §6903(5):

a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical or infectious characteristics may –

(A) cause or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible illness; or

(B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

38. National Contingency Plan: As used in this Complaint, the term National Contingency Plan ("NCP") means the National Oil and Hazardous Substance Pollution

Contingency Plan as set forth in 40 C.F.R. Part 300; the Congressionally-mandated plan developed by the United States Environmental Protection Agency that delineates the required procedures for investigating, analyzing remedial alternatives, responding to, and abating the adverse effects of releases of hazardous substances and/or hazardous wastes into the environment.

39. Operator: As used in this Complaint, the term "operator" shall mean the person responsible for the overall operation of a facility, as provided in 40 C.F.R. §260.10.

40. Owner: As used in this Complaint, the term "owner" shall mean the person who owns a facility or part of a facility, as provided in 40 C.F.R. §260.10.

41. Phosphogypsum: As used in this Complaint the term "Phosphogypsum" shall include all components of the generated gypsum slurry waste including acidic wastewater, phosphogypsum, radioactive material, cadmium, fluoride, iron, lead, phosphorous, zinc and other contaminants. Phosphogypsum is a waste product generated incident to the production of phosphoric acid by treating phosphate ore with sulfuric acid. Phosphogypsum is radioactive due to the presence of naturally occurring uranium and thorium, and their daughter isotopes radium, radon, polonium, etc. When discarded or intended to be discarded, Phosphogypsum has been determined to be and is a hazardous substance, hazardous waste and/or a solid waste subject to CERCLA and RCRA.

42. Release: As used in this Complaint, the term "Release" shall have the meaning set forth in CERCLA §§101(8) and (22), 42 U.S.C. §§ 9601(8) and (22).

43. Response Costs: As used in this Complaint, the term "Response Costs" shall include both: the costs of response incurred and paid by the FIMRT to address MFA's disposal, release and threatened release of Phosphogypsum, hazardous substances, hazardous waste and/or solid waste at the Site during MFA's Ownership and MFA's Operation; as well as the costs of response incurred and paid by the SCD to address MFA's disposal, release an threatened release of Phosphogypsum, hazardous substances, hazardous waste and/or solid waste at the Site during MFA's Ownership and MFA's Operation.

44. Site: As used in this Complaint, the term "Site" shall mean that certain parcel of real property consisting of approximately 160 acres, commonly referred to as 420 S. Malang Road, Joplin, MO 64801. The Site is located in Jasper County, MO, bearing Parcel ID 18100200000003000 and Alternate ID 02-180055-0000.

45. Solid Waste: As used in this Complaint, the term "solid waste" shall have the meaning set forth in RCRA § 1004(27), 42 U.S.C. §6903(27):

> [a]ny garbage, refuse, sludge from a waste treatment plant, water supply treatment plant or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities....

### VII. General Allegations

46. Regulations pertaining to hazardous waste found at 40 C.F.R. §§261-281 were enacted pursuant to RCRA, 42 U.S.C. §§ 6901-6992(k).

47. Regulations pertaining to solid waste found at 40 C.F.R. §§239-282 were enacted pursuant to RCRA, 42 U.S.C. §§ 6901-6992(k).

48. SCD is a person, as that term is defined in 42 U.S.C. 6903(15), 9601(21) and 40 C.F.R. Part 720.3(x), in that SCD is a limited liability company series with limited liability pursuant to Mo. Rev. Stat. § 347.186.

49. SCA is a person, as that term is defined in 42 U.S.C. 6903(15), 9601(21) and 40 C.F.R. Part 720.3(x), in that SCA is a limited liability company series with limited liability pursuant to Mo. Rev. Stat. § 347.186.

50. MFA is a person as that term is defined in 42 U.S.C. §6903(15), 9601(21) and 40 C.F.R. Part 720.3(x), in that MFA is a Non-Stock Coop.

51. Because MFA owned the Site from on or about October 2, 1953, and continuously through on or about April 1, 1957, MFA is a past owner pursuant to 40 C.F.R. §260.10.

52. Because MFA operated the Site from on or about October 2, 1953, and continuously through on or about April 1, 1957, MFA is a past operator pursuant to 40 C.F.R. §260.10.

53. Through preliminary investigative activities, the presence of various hazardous substances and/or solid waste, including but not limited to Phosphogypsum, have been detected in soil, groundwater and surface water at and in the vicinity of the Site. Because of their toxicity and trace radioactivity, each of these substances is subject to comprehensive federal regulation.

54. The United States Environmental Protection Agency has banned most applications of Phosphogypsum.

55. The MFA Ownership and MFA Operations have resulted in the past, present and ongoing release, abandonment, discharge and disposal of Phosphogypsum, hazardous substances, hazardous waste and/or solid waste into the unrestricted environment in the vicinity of the Site,

which have entered the subsurface, soils, surface waters and groundwater proximate and adjacent to the Site.

56. The MFA Ownership and the MFA Operations at the Site contributed to the past, present and ongoing handling storage, treatment, transportation or disposal of Phosphogypsum, hazardous substances, hazardous waste and/or solid waste into the surrounding environment, including soil and surface water and groundwater.

57. As a result of MFA's release, abandonment, discharge and disposal of Phosphogypsum, hazardous substances, hazardous waste and/or solid waste into the unrestricted environment at and in the vicinity of the Site, the Site is a facility pursuant to 40 C.F.R. §260.10.

58. Because the MFA Ownership and MFA Operations did produce and continues to produce Phosphogypsum, hazardous substances, hazardous waste and/or solid waste contamination, MFA is a past and present generator pursuant to 40 C.F.R. §260.10.

59. MFA has caused, maintained and/or contributed to the imminent and substantial endangerment at the Site described herein; in that MFA has released, abandoned, discharged and disposed of significant quantities of Phosphogypsum, hazardous substances, hazardous waste and/or solid waste at the Site, resulting in conditions which are potentially injurious to health and/or the environment. The Phosphogypsum, hazardous substances, hazardous waste and/or solid waste released, abandoned, discharged and disposed of by MFA as described above constitute discarded materials from industrial operations.

60. The Phosphogypsum, hazardous substances, hazardous waste and/or solid waste released, abandoned, discharged and disposed of at the Site by MFA during and resulting from the MFA Ownership and MFA Operations may present an imminent and substantial endangerment to health or the environment in that the Phosphogypsum, hazardous substances, hazardous waste and/or solid waste present at the Site may become airborne and therefore may be susceptible to inhalation by the public, may become attached to soils and therefore may be susceptible to ingestion by the public, and may continue to migrate through soil, surface water, and groundwater at and in the vicinity of the Site, thereby potentially degrading and threatening to potentially degrade the quality and potential beneficial use of such soil, surface water, and groundwater.

61. The Phosphogypsum, hazardous substances, hazardous waste and/or solid waste which MFA handled, stored, owned, generated, transported, operated and disposed of at and from the Site at various times, past and present, have commingled in the environment, including soil,

surface water, and groundwater in, at, on, underlying, emanating from and in the vicinity of the Site.

62. Because the Phosphogypsum, hazardous substances, hazardous waste and/or solid waste attributable to the past and present generation, operation, handling, storage, treatment, transportation or disposal of Phosphogypsum, hazardous substances, hazardous waste and/or solid waste by MFA has commingled in sub-surface soils and groundwater at and around the Site, it is scientifically and technologically infeasible to apportion the resulting single indivisible harm and potential endangerment to health and the environment, nor can that single, indivisible harm and endangerment to health and the environment be abated or remediated by addressing any portion of the Phosphogypsum, hazardous substances, hazardous waste and/or solid waste contamination without addressing the entire Phosphogypsum, hazardous substances, hazardous waste and/or solid waste contamination problem.

63. The commingled discharges described in paragraph 61 above created a single indivisible harm and may have presented and today may present an imminent and substantial endangerment to health and the environment.

64. Until properly remediated, the Phosphogypsum, hazardous substances, hazardous waste and/or solid waste released, abandoned, discharged and disposed of by MFA are continuing to cause or contribute to the imminent and substantial endangerment to health and the environment described above.

65. Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), allows citizens to bring suit in order to stop an "imminent and substantial endangerment to health or the environment." It provides that any person may commence an action against "any person [. . .] including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment[.]"

66. On December 20, 2021, Plaintiff gave notice of the endangerment and its intent to file suit to MFA, MFA's registered agent, United States Attorney General, United States Environmental Protection Agency ("EPA"), EPA Region VII, and the Missouri Department of Natural Resources, as required by Section 7002(a) of RCRA, 42 U.S.C. § 6972(a). Electronic

delivery receipts show the notice letter was received by MFA and other entities to whom the letter was sent on or before December 27, 2021. Plaintiffs' notice letter is attached as Exhibit C and is incorporated by reference herein.

67. More than ninety days have passed since Plaintiffs provided notice of intent to file suit to MFA and others.

68. Neither the EPA nor the State of Missouri have commenced or are diligently prosecuting a civil or criminal action in a state or federal court to abate the imminent and substantial endangerment to health and the environment alleged in Plaintiffs' notice letter. Similarly, the EPA, under the Comprehensive Environmental Response, Compensation and Liability Act, is not engaged in any of the actions described in 42 U.S.C. 6972(b)(2)(B) with respect to the conditions described herein.

## **FIRST CAUSE OF ACTION**
*Abatement of Imminent and Substantial Endangerment Pursuant to
RCRA Section 7002(a)(1)(B), 42 U.S.C. §6972(a)(1)(B)*

69. Plaintiffs refer to and realleges paragraphs 1 through 68 of this Complaint and incorporate them herein by this reference.

70. Pursuant to RCRA Section 7002(a)(1)(B), having given the required notice, Plaintiffs may commence a citizen suit against "any person," "including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).

71. Each Plaintiff is a person as defined in in RCRA §1004(15), 42 U.S.C. §6903(15).

72. MFA is a person as defined in RCRA §1004(15), 42 U.S.C. §6903(15).

73. Phosphogypsum is a "solid waste" under RCRA §1004 because it is "discarded material," which includes liquid or semisolid material resulting from industrial or commercial operations. 42 U.S.C. § 6903(27).

74. The Site is a facility as defined by 40 C.F.R Part 260.10.

75. MFA is a past generator respecting the Phosphogypsum in, at, on, underlying, emanating from and in the vicinity of the Site as defined by 40 C.F.R Part 260.10.

76. MFA is a past owner respecting the Phosphogypsum in, at, on, underlying, emanating from and in the vicinity of the Site as defined by 40 C.F.R Part 260.10.

77. MFA is a past operator respecting the Phosphogypsum in, at, on, underlying, emanating from and in the vicinity of the Site as defined by 40 C.F.R Part 260.10.

78. As set forth above, MFA has engaged in the operations of handling, storage, treatment, transportation, or disposal of Phosphogypsum. Thus, MFA has contributed and is contributing to the past and present handling, storage, treatment, transportation, or disposal of a solid waste under RCRA.

79. MFA's handling, storage, treatment, transportation, or disposal of Phosphogypsum, hazardous substances, hazardous waste and/or solid waste has contaminated soil, surface water, and groundwater in, at, on, underlying, emanating from and in the vicinity of the Site, and may present an imminent and substantial endangerment to health or the environment until completely abated.

80. Plaintiffs have demanded that MFA immediately perform, at its sole cost, the required response actions including but not limited to developing and implementing an NCP compliant remedial investigation and feasibility study which fully characterizes the lateral and vertical extent of the Phosphogypsum, hazardous substances, hazardous waste and/or solid waste contamination in, at, on, underlying, emanating from and in the vicinity of the Site, and which results in an NCP compliant remedial action plan which fully abates the endangerment resulting from the contamination. These demands have not been met by MFA, even though MFA has caused, contributed to, or is contributing to the past, present and ongoing handling, storage, treatment, transportation, or disposal Phosphogypsum, hazardous substances, hazardous waste and/or solid waste at the Site which may present an imminent and substantial endangerment to health and the environment.

81. This court has authority pursuant to 42 U.S.C. §6972(a) to order both mandatory and permanent prospective injunctive relief requiring MFA to take all actions necessary to investigate and abate the imminent and substantial endangerment to health or the environment which may exist at the Site. Because of the serious nature of the contamination at and in the vicinity of the Site, and the potential impact thereof upon health or the environment, a comprehensive approach to the imminent and substantial endangerment is necessary, including, without limitation, requiring MFA to immediately, at its sole cost, develop and implement an NCP

compliant remedial investigation and feasibility study which fully characterizes the lateral and vertical extent of the Phosphogypsum, hazardous substances, hazardous waste and/or solid waste contamination at and in the vicinity of the Site, and which results in the development and implementation of an NCP compliant remedial action plan, approved by the Court, which fully abates the endangerment resulting from the contamination in conformity with all Applicable or Relevant and Appropriate Requirements ("ARARs").

## SECOND CAUSE OF ACTION
*Cost Recovery Pursuant to CERCLA Section 107(a)(4)(B), 42 U.S.C. §9607(a)(4)(B)*

82. Plaintiffs refer to and reallege paragraphs 1 through 81 of this Complaint and incorporate them herein by this reference.

83. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides that any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of shall be liable for all necessary costs of response incurred by a person consistent with the NCP.

84. Each Plaintiff is a person as defined in CERCLA §101(21), 42 U.S.C. §9601(21).

85. MFA is a person as defined in CERCLA §101(21), 42 U.S.C. §9601(21).

86. The FIMRT is a person as defined in CERCLA §101(21), 42 U.S.C. §9601(21).

87. The Site, the lateral and vertical extent of the Phosphogypsum, hazardous substances, hazardous waste and/or solid waste contamination, and any area where any hazardous substance from the Site has come to be located, is a "facility" within the meaning of CERCLA §101(9), 42 U.S.C. §9601(9). The Phosphogypsum released at or from the Site has contaminated the Site.

88. Under CERCLA, "disposal" includes "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." CERCLA §101(29), 42 U.S.C. §9601(29).

89. The Phosphogypsum released, abandoned, discharged and disposed of by MFA constitutes a hazardous substance within the meaning of CERCLA §101(14), 42 U.S.C. §9601(14).

00928817                                                     13

Case 3:22-cv-05021-WBG   Document 1   Filed 03/28/22   Page 13 of 16

90. There was an actual or threatened release of hazardous substances into the environment at and from the Site within the meaning of CERCLA §§101(8) and (22), 42 U.S.C. §§ 9601(8) and (22).

91. CERCLA §107(a), 42 U.S.C. §9607(a), imposes strict liability without regard to fault on those persons who owned or operated a facility at the time hazardous substances were disposed of at such facility.

92. MFA was the owner and/or operator of the Site at the time of disposal of hazardous substances at and from the Site under section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), which contaminated the Site.

93. The MFA Ownership of and the MFA Operations at the Site have resulted in releases or the substantial threat of releases, within the meaning of CERCLA §101(22), 42 U.S.C. §9601(22), of hazardous substances.

94. MFA is therefore liable within the meaning of CERCLA §107, 42 U.S.C. §9607.

95. Plaintiffs have incurred Response Costs all of which were, at all times, necessary and consistent with the NCP.

96. MFA is jointly and severally liable, without regard to fault, pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for Plaintiffs' Response Costs incurred to address the release and disposal of hazardous substances at the Site.

97. Pursuant to CERCLA §107, 42 U.S.C. §9607, MFA is also liable for interest accrued on all incurred Response Costs.

## THIRD CAUSE OF ACTION
*Declaratory Judgment Pursuant to CERCLA Section 107(a)(4)(B), 42 U.S.C. §9607(a)(4)(B)*

98. Plaintiffs refer to and reallege paragraphs 1 through 97 of this Complaint and incorporate them herein by this reference.

99. An actual, present and justiciable controversy has arisen between Plaintiffs and MFA concerning MFA's liability for the Response Costs.

100. CERCLA §113(g)(2)(B), 42 U.S.C. §9613(g)(2)(B) provides in pertinent part:

…the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

101. Plaintiffs seek declaratory judgement from this Court that MFA is liable all response costs that may be incurred in connection with the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

### FIRST CAUSE OF ACTION

1. For preliminary and permanent injunctive relief enjoining MFA, at its sole cost, to develop and implement an NCP compliant remedial investigation and feasibility study which fully characterizes the lateral and vertical extent of the Phosphogypsum, hazardous substances, hazardous waste and/or solid waste contamination at and an in the vicinity of the Site, and which results in the development and implementation of an NCP compliant remedial action plan, approved by the Court, which fully abates the endangerment resulting from the contamination in conformity with ARARs; and

2. For recovery, from MFA, of all costs of suit, attorney and expert witness fees and costs pursuant to RCRA §7002(e), 42 U.S.C. §6972(e).

### SECOND CAUSE OF ACTION

1. For judgement, CERCLA §107(a), 42 U.S.C. §9607(a), that MFA is jointly and severally liable without regard to fault to Plaintiffs for all unreimbursed Response Costs, in an amount to be proven at trial, but at least $7,765,134, incurred in response to the release and/or threatened release of hazardous substances at the Site; and

2. For interest to be paid to Plaintiffs on the above sums as provided under section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

### THIRD CAUSE OF ACTION

1. For a declaratory judgment, pursuant to 28 U.S.C. § 2201 and section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that MFA is jointly and severally liable without regard to fault to Plaintiffs for all future Response Costs incurred in response to the release and/or threatened release of hazardous substances at the Site.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## ALL CAUSES OF ACTION

1. For pre- and post-judgment interest in accordance with law;

2. For costs of suit; and

3. For such other and further relief as this Court deems just and proper.

Dated: March 28, 2022                           Respectfully submitted,

                                                */s/ Colin N. Gotham*                .
AARON L. BOWERS, ESQ.                           COLIN N. GOTHAM, ESQ.
CERTUS ADVISORY PARTNERS                        EVANS & MULLINIX, P.A.
*Pro Hac Vice Admission Pending*                KS#19538; MO#52343
7400 W. 132nd Street, Suite 200                 7225 Renner Road, Suite 200
Overland Park, KS 66213-1153                    Shawnee, KS 66217
Telephone: (913) 433-7071                       Telephone: (913) 890-7005
Facsimile: (913) 433-7171                       Facsimile: (913) 962-8702

                                                Counsel for Plaintiffs