# EXHIBIT – A

**BEFORE THE MISSOURI DEPARTMENT OF NATURAL RESOURCES**

| | |
|---|---|
| **IN THE MATTER OF:** ) | |
| ) | |
| **Former Farmland Industries** ) | |
| **Jasper County Gypstack** ) | |
| **Joplin, Missouri** ) | |
| **Parcel # 18100200000003000** ) | |
| **100 S. Malang Road, Joplin, Missouri 64801** ) | |
| ) | |
| **Short Creek Development, LLC, a** ) | |
| **Daughter Series of Short Creek** ) | |
| **Capital, LLC** ) | |
| ) | |
| **and** ) | Order No. 22-WMPD-#### |
| ) | |
| **MFA INCORPORATED** ) | |
| ) | |
| ) | |
| **Proceeding under the Missouri** ) | |
| **Solid Waste Management Law** ) | |

**ADMINISTRATIVE ORDER ON CONSENT**

    The issuance of this Administrative Order on Consent No. 22-WMPD-### (Order) by the Missouri Department of Natural Resources (Department) is a formal administrative action by the state of Missouri and is being issued because Short Creek Development, LLC, a Daughter Series of Short Creek Capital, LLC, and MFA INCORPORATED (together, Respondents), have voluntarily approached the Department and agreed to certain regulatory obligations pursuant to the Missouri Solid Waste Management Law (MSWML), Sections 260.200 – 260.345, of the Revised Statutes of Missouri (RSMo), and its implementing regulations. This Order is issued under the authority of Sections 260.225 and 260.249, RSMo.

    This Order does not constitute a waiver or a modification of any requirements for the MSWML, or its implementing regulations, all of which remain in full force and effect. Compliance with the terms

of this Order shall not relieve the Respondents of liability for any future violations of the MSWML, other environmental statutes and regulations, or preclude the Department from initiating an administrative or judicial enforcement action. Noncompliance with this Order or the MSWML may result in the Department pursuing legal action for injunctive relief, additional penalties, and any other remedy authorized by law.

**FINDINGS OF FACT**

Entities and Locations

1. The Respondent Short Creek Development, LLC, a Daughter Series of Short Creek Capital, LLC (Short Creek LLC), is a Missouri limited liability company with active status.

2. The Respondent MFA INCORPORATED (MFA) is a Missouri corporation in good standing.

3. The former Joplin Phosphate Fertilizer Gypstack site is located at 100 S. Malang Road, Joplin, Jasper County, Missouri; Jasper County Parcel Number 18100200000003000 (the Gypstack property).

4. Located on the Gypstack property is a mount of approximately 2.7 million tons of waste phosphogypsum (the Gypstack or phosphogypsum pile).

5. The Joplin Phosphate Fertilizer Plant (Plant), which is adjacent to the Gypstack property, originally generated the phosphogypsum that comprises the Gypstack. The Plant operations involved the production of large quantities of phosphogypsum, a by-product of the wet phosphoric acid production process.

6. MFA owned the Gypstack property and Plant from June 1953 to April 1, 1957. Ownership transitioned from MFA to the precursor entity to Farmland Industries via contract between

April 1, 1957 through September 6, 1970. Thereafter, Farmland Industries continued operation of the Plant and placement of phosphogypsum material on the Gypstack.

7. Farmland Industries sold the Plant to PCS Phosphate Company, Inc. in 2000. The Plant ceased operation in 2012.

8. Farmland Industries' entered into bankruptcy in May 2002. As a result, Farmland Industries entered a Trust Agreement with the Department on April 30, 2004, in which the Farmland Industries successor, FI Missouri Remediation Trust (FIMRT), accepted sole liability for the Gypstack. Thereafter, FIMRT conducted efforts to remediate the Gypstack and other environmental liabilities.

9. On September 21, 2021, the FIMRT terminated pursuant to the terms of the FIMRT Trust Agreement (Trust Agreement). Short Creek LLC became the sole owner of the Gypstack. Short Creek LLC agreed to assume all environmental liability associated with the Gypstack.

<u>The Gypstack</u>

10. The phosphogypsum pile consists of about 165 acres of property; approximately 60 of those acres are covered with waste phosphogypsum, as well as demolition wastes and mining wastes. It contains an estimated 2.7 million tons of phosphogypsum.

11. Precipitation and surface water flow infiltrate the Gypstack, and leach phosphorus and fluoride from it. Leachate samples contain phosphorus and fluoride, and surface water samples from Short Creek contain phosphorous and fluoride. The primary contaminants of concern from the Gypstack are phosphorus and fluoride.

12. Placement of phosphogypsum onto the Gypstack ceased on [DATE 1971]. No additional solid wastes have been placed on the Gypstack by Respondents.

<u>Relevant Historical Environmental and Regulatory Considerations</u>

13. The Gypstack is located within the Oronogo-Duenweg Mine Belt Superfund Site (ODMB Superfund Site). The U.S. Environmental Protection Agency (EPA) added the ODMB Superfund Site to the national priorities list (NPL) in 1990, to address the environmental impact from historic mining activities.

14. The ODMB Superfund Site is divided into eleven Designated Areas and four Operable Units (OUs). OU #1 is designated for mine tailings; OU #2 for residential soils in smelting areas; OU #3 for residential soils in mining areas; and OU #4 for ground water. The Gypstack and Gypstack Property is located within the Belleville/Chem Plant Designated Area.

15. There are OU #1 impacts at the Gypstack Property, including mine tailings. According to the EPA, the mine tailings characteristics include lead, zinc, and cadmium.

16. Mining operations occurred prior to Farmland Industries' ownership of the Gypstack Property and the Gypstack.

17. As a part of its fertilizer production operations, Farmland Industries maintained a Missouri State Operating Permit MO-0053627 (MSOP). The permit first authorized discharge of "seepage and runoff from waste phosphogypsum pile . . . collected in Short Creek and pumped to chemical precipitation treatment plant where it is treated and discharged" to Short Creek at Outfall #003. The MSOP has subsequently been modified to a no-discharge permit.

18. In May 2009, a contractor for FIMRT issued a Metals Investigation Report (Metals Report), prepared in conjunction with the Department, that recommend future NPDES permit requirements should be restricted to constituents related to the Gypstack, and not the surrounding mine wastes. The Metals Report concluded that aluminum, arsenic, fluoride, phosphorous, and sulfate were all associated with the Gypstack. The Metals Report recommended any MSOP associated with the Gypstack be limited to potential contaminants associated with the Gypstack, and not with surrounding

OU #1 mine tailings. Specifically, the Metals Report recommended a future MSOP include requirements for fluoride, total phosphorus, ammonia, nitrate/nitrite, and sulfate.

19. In 2010, EPA's contractor, Black & Veatch, produced a Geotechnical Report to investigate subsurface conditions at the site and to evaluate the potential vertical expansion of the existing phosphogypsum pile through the addition of historical mine waste from disparate piles of tailings and chat from the ODMB Superfund Site.

20. In July 2013, the MSOP received modifications into a no-discharge permit. The permitted leachate system became a closed-loop design to manage leachate emanating from surface seeps along the north and west extents of the phosphogypsum pile, and surface water runoff. The system collects and recirculates through extensive lateral drain lines adjacent to Short Creek into two leachate collection sumps (designated manholes MH1N and MH1W). The collected leachate discharges into a horizontal infiltration gallery located on top of the Gypstack through two discharge lines, one originating from each sump location.

21. In September 2013, EPA amended the Record of Decision (ROD) for ODMB Superfund Site OU #1, selected a remedial action, and designated the phosphogypsum pile as an appropriate repository for lead mining wastes from remediation work associated with the ODMB Superfund Site. The recommended remedial action included installation of a cap to reduce contact with lead-contaminated soils and to control of runoff of mine waste from the repository.

22. In 2016, EPA and FIMRT entered an Administrative Settlement and Order on Consent for Treatability Study with EPA to address leachate treatment at the site. Interceptor trenches were installed on the north and west side of Gypstack. The treatability study additionally investigated a proposed interceptor trench along the phosphogypsum pile's eastern edge intended to divert clean water

into Short Creek to reduce leachate volume in the pile, but the trench proved infeasible due to high groundwater conditions.

23. As of June 2021, the no-discharge leachate system experienced problematic operations reducing effective functionality. It is unknown whether leachate has discharged either off the Gypstack or from the leachate system into Short Creek.

## **CONCLUSIONS OF LAW**

24. The Department is authorized pursuant to § 260.225, RSMo, to "administer sections 260.200 to 260.345," and pursuant to § 260.225.1(9) RSMo, the Department shall "issue such permits and orders and conduct such inspections as may be necessary to implement the provisions of sections 260.200 to 260.345 and the rules and regulations adopted pursuant to sections 260.200 to 260.345."

25. Short Creek, LLC is a "person" as defined at § 260.200.1(31) RSMo.

26. MFA is a "person" as defined at § 260.200.1(31) RSMo.

27. Phosphogypsum, as situated in the Gypstack, is a "solid waste" as defined at § 260.200.1(46) RSMo.

28. The Gypstack property is a "solid waste disposal area" as defined at § 260.200.1(47) RSMo.

29. Because Respondents have conducted no further disposal activity, and no further disposal activity is expected for the Gypstack, the Gypstack and the Gypstack property are appropriate for "closure" as that term is defined at § 260.200.1(7), RSMo.

30. Respondents agree to perform closure and postclosure operations and are therefore operators pursuant to § 260.200.1(29), RSMo.

31. To ensure proper encapsulation of the Gypstack to limit exposure to the elements, surface water contact, and reduce leachate, a Closure Plan and Postclosure Plan, as those terms are respectively

defined at §§ 260.200.1(8) and (33), RSMo, are necessary to protect a threat to the public health or the environment, pursuant to § 260.227.1, RSMo.

**AGREEMENT**

Gypstack Closure and Maintenance Terms

32. EPA intends to cap the lead mining waste placed at the Gypstack repository. This work will be performed pursuant to a Remedial Design detailing the design specifications and plan for installation of the cap.

33. Within 120 days of receipt of EPA's Remedial Design for capping the Gypstack, Respondents agree to provide to the Department for review and approval, a Closure Plan and a Postclosure Plan, meeting the requirements in §§ 260.200.1(8), 260.200.1(33), 260.226.1, and 260.227, RSMo.

34. Respondent(s)' plan must propose mitigation measures to successfully capture and treat (a) Gypstack leachate and (b) surface water runoff from the Gypstack, to prevent a threat to the public health or the environment from contaminants entering into Short Creek, groundwater, or onto abutting properties. Such a plan, must include, at a minimum:

    A. A schedule for implementation, beginning with the date of plan approval by the Department;

    B. A list of contaminants of concern;

    C. The method or mitigation process(es) to be used, including any transportation and/or disposal for any wastes generated and or removed at the site;

    D. Contingency plans for mitigating human exposure to concentrations of radon flux within the Gypstack;

E. Contingency plans in the event that unexpected conditions or materials are encountered; and

F. A description of how complete and successful remediation shall be confirmed.

35. Upon approval of the Closure Plan and Postclosure Plan, Respondents shall implement the plans in accordance with the schedules contained therein. If the plans' implementation fails to fully mitigate any contamination, Defendants shall submit a Corrective Action Plan that shall address any deficiencies in the execution and or functioning of the Closure Plan and Postclosure Plan, and shall, in addition to the requirements in § 260.227 RSMo, include the elements identified in Subparagraphs 25.A through E. The Corrective Action Plan shall be implemented upon approval.

36. Respondents agree to retain sufficient technical expertise to coordinate the necessary work under a Department-approved Closure Plan, Postclosure Plan, and any Corrective Action Plan, sufficient to meet the requirements of § 260.206, RSMo (a Project Coordinator). The Project Coordinator may not be an attorney representing Respondents in this matter. Respondents' Project Coordinator may assign other representatives, including other contractors, to assist in meeting the requirements of this Order.

General Terms

37. The Department and the Respondents desire to amicably resolve all claims that the Department might bring pursuant to the MSWML and regulations described above, without the Respondents admitting the validity or accuracy of such claims.

38. The Department and the Respondents agree that this Order resolves only the specific matters described herein, that this Order shall not be construed as a waiver or a modification of any requirements of the MSWML and regulations, or any other source of law, and that this Order does not resolve any claims based on any failure by the Respondent to meet the requirements of this Order, or

claims for past, present, or future violations of any statutes or regulations other than those specifically referenced herein.

39. The provisions of this Order shall apply to and be binding upon the parties executing this Order, their agents, assigns, affiliates, and lessees, any persons acting under, through, or for the parties agreeing hereto. Any changes in ownership status of the property shall not affect the responsibilities of the Respondents under this Order.

40. Contingent upon the Respondents' compliance with this Order, the Department agrees not to bring or cause to be brought any administrative action against the Respondents for penalties arising out of the violations of the MSWML and regulations.

41. Respondents agree to comply with the Missouri Solid Waste Management Law and regulations and the Missouri Clean Water Law and regulations.

## OTHER PROVISIONS

42. Nothing in this order excuses the Respondents for any future non-compliance with the laws of the state of Missouri, and the Department expressly reserves the right to address future non-compliance in any matter authorized by law. Specifically, the Department expressly reserves the right to take further action if the Respondents violate the MSWML and regulations or the MCWL and its implementing regulations.

43. By signing this Order, all signatories assert that they have read and understand the terms of this Order, that they had the opportunity to consult with counsel, and that they have the authority to sign this Order on behalf of their respective parties.

44. This Order shall be construed and enforced according to the laws of the state of Missouri, and the terms stated herein shall constitute the entire and exclusive agreement of the parties hereto with respect to the matters addressed herein. The terms of this Order supersede all previous memoranda of

understanding, notes, conversations, and agreement whether expressed or implied. This order may not be modified orally.

45. If any provision of this Order is found to be unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired.

46. This order will become final, effective, and fully enforceable upon the date the Department signs it.

## CORRESPONDENCE AND DOCUMENTATION

The subject of this order will necessitate ongoing communication and cooperation between the various entities associated with work and oversight of the Gypstack, including the Department, EPA Region VII, Short Creek, LLC, and MFA. Correspondence or documentation with regard to this Order shall be directed to the following persons, subject to change upon written notification from either party.

47. All verbal notices and written communications provided to Respondents under this Order shall be directed as follows:

> For Short Creek, Development LLC:
> Aaron L. Bowers, Managing Member
> Short Creek Development, LLC
> 7400 W. 132nd Street, Ste. 200
> Overland Park, KS 66213
> abowers@shortcreekcapital.com
>
> Project Coordinator
> Nick Godfrey, Project Coordinator
> 1731 Locust Street
> Kansas City, Missouri 64108
> 816-285-8410
> 913-269-1885
> ngodfrey@environmentalworks.com
>
> For the Department:
> Chris Nagel, Director
> Waste Management Program

**Commented [WJ1]:** For Short Creek, LLC: This name was from a prior conversation with DNR attorney Scott Stacey. Is this still accurate?

Missouri Department of Natural Resources
P.O. Box 176
Jefferson City, MO 65102-0176

For the U.S. Environmental Protection Agency, Region VII
[Name, Title]
[Program Title]
[Address]
[Telephone]
[Email address]

## RIGHT OF APPEAL

By signing this Order, Respondents waive any rights to appeal, judicial review, or any other challenge to this Order pursuant to Sections 260.235, 621.250, Chapters 536 or 640, RSMo, or any other source of law.

**AGREED TO AND SO ORDERED:**

**MISSOURI DEPARTMENT OF NATURAL RESOURCES**        **SHORT CREEK DEVELOPMENT, LLC**

_____        _____
Chris Nagel, Director                                    Aaron L. Bowers
Waste Management Program                      Managing Member

Date: _____        Date: _____

**MFA, INCORPORATED**

_____
[Signatory Name]
[TITLE]

Date: _____