IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| SHORT CREEK DEVELOPMENT, LLC, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No. 22-05021-CV-SW-WBG ) |
| MFA INCORPORATED, | ) ) ) |
| Defendant. | ) |

## ORDER

Pending is Defendant MFA Incorporated's Motion to Dismiss. Doc. 9. For the following reasons, Defendant's Motion to Dismiss is **DENIED**.

### I. BACKGROUND

This matter arises from the alleged release and/or threatened release of hazardous substances on or near 160-acres of real property in Joplin, Missouri (hereinafter, "the site"). Doc. 1 at 1-2, 7.[1] From 1953 to 1957, Defendant MFA Incorporated owned the site and operated a plant foods facility adjacent thereto. *Id*. at 2. Defendant produced phosphoric acid, which is a fertilizer component, and the manufacturing process resulted in a gypsum slurry waste commonly called phosphogypsum.[2] *Id*. Defendant disposed of and discharged phosphogypsum at the site. *Id*.

In 1957, Defendant and Farmland Industries, Inc. (formerly known as Consumers Cooperative Association) formed Farmers Chemical Company ("FCC") to take over Defendant's manufacturing process at the facility. Doc. 1 at 3. On April 1, 1957, Defendant conveyed the

---

[1] The Court cites to the pagination autogenerated and applied by CM/ECF to filings. Accordingly, the pagination applied by the parties may differ.

[2] The complaint defines phosphogypsum as "all components of the generated gypsum slurry waste including acidic wastewater, phosphogypsum, radioactive material, cadmium, fluoride, iron, lead, phosphorous, zinc and other contaminants." Doc. 1 at 7.

site's title to FCC. *Id*. FCC used the site as a repository or disposal facility for phosphogypsum waste until 1971. *Id*. At that time, the manufacturing process was changed to eliminate the generation of phosphogypsum waste. *Id*. In 1999, FCC merged into Farmland Industries, Inc. ("FI"). *Id*.

In 2002, FI and certain affiliates ("the debtors") filed for Chapter 11 bankruptcy. Doc. 1 at 3. In December 2003, the United States Bankruptcy Court for the Western District of Missouri confirmed the debtors' amended liquidation plan. *Id*. In April 2004, and pursuant to the amended liquidation plan, the FI Missouri Remediation Trust ("FIMRT") was formed as a Qualified Settlement Fund pursuant to Internal Revenue Code § 468(b) to address, among other things, "the [p]hosphogypsum, hazardous substances, hazardous waste and/or solid waste in, at, around, underlying and emanating from the Site." *Id*. From its inception through December 31, 2021, "FIMRT incurred and paid approximately $7.75 million as necessary costs of response to address the [p]hosphogypsum, hazardous substances, hazardous waste and/or solid waste released, discharged to and disposed" by Defendant at the site. *Id*. at 3-4.

In September 2021, Plaintiff Short Creek Development, LLC ("SCD") purchased the site from FIMRT. Doc. 1 at 4. Pursuant to the purchase agreement, FIMRT executed an assignment of claim agreement in favor of Plaintiff Short Creek Advisors, LLC ("SCA"). *Id*. Thus, SCA is the holder of all rights, titles, and interests in and to the assigned claims. *Id*.

On March 23, 2022, the Missouri Department of Natural Resources ("MDNR") sent a draft proposed Administrative Order on Consent ("AOC") to counsel for Plaintiffs and Defendant. Doc. 1 at 4; *see also* Doc. 1-2. The draft AOC, if executed, would require Plaintiffs and Defendant to propose and implement "mitigation measures to successfully capture and treat (a) Gypstack leachate and (b) surface water runoff from Gypstack," and "prevent a threat to the public health or

the environment from contaminants entering into Short Creek, groundwater, or onto abutting properties." Doc. 1-2 at 8-9. Upon execution, the AOC would, among other things, "resolve all claims" MDNR might bring pursuant to the Missouri Solid Waste Management Law ("MSWML") without Plaintiffs and Defendant "admitting the validity or accuracy of such claims." *Id*. at 9.

On March 28, 2022, Plaintiffs filed this matter. Doc. 1. They seek relief under two statutes: (1) the Comprehensive Environmental Response, Compensation, and Liability Action of 1980, 42 U.S.C. § 9607(a) ("CERCLA"), and (2) section 7002(a) of the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act of 1976 and further amended by the Hazardous and Solid Waste Amendments of 1984 ("RCRA"). *Id*. at 1-2, 10-15. Pursuant to RCRA, Plaintiffs ask the Court to order Defendant to investigate and abate "the imminent and substantial endangerment to health or the environment" at the site. *Id*. at 1-2, 10-13, 15. Plaintiffs also seek a declaration from the Court that Defendant is liable for all future costs associated with the release and/or threatened release of hazardous substances at the site. *Id*. at 2, 11, 13-15. And they request recovery of all costs they have "incurred to address the release and disposal of hazardous substances at the [s]ite." *Id*. at 1-2, 11, 13-15. In the pending motion, Defendant argues Plaintiffs' Complaint should be dismissed because it fails to state a claim upon which relief may be granted. Doc. 9.

## II. STANDARD

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the Rule 8 pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a pleading contains "labels and

3
Case 3:22-cv-05021-WBG    Document 28    Filed 07/21/22    Page 3 of 11

conclusions," "formulaic recitation of the elements" of a claim, or "naked assertion[s]" lacking "further factual enhancement," the pleading standard is not satisfied. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

To survive a motion to dismiss for failure to state a claim, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 757 (8th Cir. 2021) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 757 (quoting *Braden*, 588 F.3d at 594).

In considering a motion to dismiss, several tenets are considered. First, a court must accept all factual allegations made in the complaint as true. *Braden*, 588 F.3d at 594. Second, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Id.* Third, all inferences are to be considered in the light most favorable to the non-moving party. *Id.* at 595 ("*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice."). Fourth, at the pleading stage, there is no requirement for direct evidence, and factual allegations may be circumstantial. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015). Finally, evaluating a complaint is context specific, and a court must "draw on its judicial experience and common sense" when considering a motion to dismiss. *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 679).

4

### III. DISCUSSION

**A. RCRA**

Enacted in 1976, the Resource Conservation and Recovery Act ("RCRA") "governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996); *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989) (citation omitted). To establish a prima facie case under RCRA's "citizen suit" provision, a person[3] must show (1) conditions presenting or "may present an imminent and substantial endangerment to health or the environment," (2) the endangerment stems from the "past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste," and (3) the defendant contributed or is contributing to such "handling, storage, treatment, transportation, or disposal." 42 U.S.C. § 6972(a)(1)(B); *Aceto Agric. Chems. Corp.*, 872 F.2d at 1382 n.9. Defendant contends Plaintiffs fail to allege an imminent and substantial endangerment to health or the environment. Doc. 10 at 10-16. Because Defendant's motion generally focuses on the first element, the Court does the same.[4]

**(1) Imminent Endangerment**

Defendant argues Plaintiffs fail to allege an imminent threat of endangerment because MDNR has been involved with the site for more than twenty years. Doc. 10 at 13-14. In support,

---

[3] RCRA defines "person" as "an individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, commission, political subdivision of a State, or an interstate body" and includes "each department, agency, and instrumentality of the United States." 42 U.S.C. § 6903(15). Neither party argues Plaintiffs and/or Defendant are not persons under RCRA.

[4] Defendant's brief also touched on whether phosphogypsum is a solid waste or hazardous waste. Doc. 10 at 10-11. Although Defendant concedes phosphogypsum is a solid waste, it argues "[p]hosphogypsum from phosphoric acid" is "excluded from RCRA **hazardous waste** requirements" because it is a "solid waste from the processing of ores and minerals." *Id*. at 10-11, 13, 17-18 (citation omitted) (emphasis added). Defendant, however, does not argue RCRA's solid waste requirements exclude phosphogypsum. Based upon the complaint before the Court and absent authority pronouncing phophogypsum's exclusion from RCRA's solid waste requirement, the Court will not dismiss Plaintiff's complaint based on this argument.

Defendant relies on opinions from the First Circuit Court of Appeals and the District of Minnesota. *Id*. at 14 (citations omitted).[5] As discussed *infra*, neither case supports Defendant's argument.

### (a) First Circuit Decision

In *Maine People's Alliance and Natural Resources Defense Council v. Mallinckrodt, Inc.*, 471 F.3d 277 (1st Cir. 2006), Mallinckrodt, which the district court found liable under RCRA after conducting a bench trial, asked the First Circuit "to restrict the role of private citizens in the abatement of imminent and substantial threats to the environment and public health." *Id*. at 279-82, 286-96. In rejecting the appeal, the First Circuit found RCRA citizen suits are permitted "when there is a reasonable prospect that a serious, near-term threat to human health or the environment exists." *Id*. at 279. A threat is "near-term" when it is "close at hand, even if the perceived *harm* is not." *Id*. at 279 n.1 (emphasis in original). "For example, if there is a reasonable prospect that a carcinogen released into the environment today may cause cancer twenty years hence, the threat is near-term even though the perceived harm will only occur in the distant future." *Id*. Based on the record, which included a bench trial, the First Circuit held the district court properly found "the plaintiffs established that the potential risk from mercury is serious and likely to be present here and now." *Id*. at 296. Thus, the district court did not err in finding there was an imminent and substantial endangerment. *Id*.

Unlike *Mallinckrodt*, this matter comes before the Court on a motion to dismiss for failure to state a claim. Instead of having the benefit of a fully developed record, only the Complaint is before the Court. And this Court must accept as true all factual allegations therein. *Braden*, 588 F.3d at 594. In addition to the difference in the procedural posture of this matter and *Mallinckrodt*,

---

[5] The Court notes Defendant cites numerous cases related to the elements of a prima facie case under RCRA, whether phosphogypsum is a solid or hazardous waste, and what "imminent and substantial endangerment" generally means. Doc. 10 at 10-13. However, Defendant only cites two cases supporting its argument that MDNR's historical involvement with the site shows there is no imminent threat. *Id*. at 14.

the First Circuit did not address whether a governmental agency's knowledge or oversight of a site for years eliminated the plaintiffs' ability to sufficiently plead conditions that "present" or "may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

### (b) District of Minnesota Decision

Similar to the case before this Court, in *United States v. Reilly Tar & Chem. Corp.*, 546 F. Supp. 1100, 1110 (D. Minn. 1982), the District of Minnesota considered whether the plaintiffs sufficiently pleaded an imminent and substantial endangerment to health or the environment under RCRA. In denying the defendant's motion to dismiss for failure to state a claim, the district court observed the plaintiffs alleged the defendant "spilled, leaked and discharged" carcinogenic and toxic chemicals "into the ground" for more than fifty-five years. *Id*. at 1110.[6] The chemicals then "entered and continue to enter the groundwater." *Id*. And absent preventative measures, the chemicals will continue to leach into the groundwater. *Id.* Based on the foregoing, the district court determined the plaintiffs sufficiently alleged an imminent and substantial endangerment to health or the environment. *Id*. Additionally, the district court specifically noted RCRA claims "may be used to supplement the response actions taken by government agencies under other environmental statutes." *Id*. at 1111 ("Even though response actions under other statutes may also be appropriate…, this does not mean that plaintiffs cannot resort to section 7003 as well.").

Similar to *Reilly Tar*, Plaintiffs allege Defendant and FCC disposed of and discarded phosphogypsum stack on the site for nearly twenty years. Doc. 1 at 2-3. Phosphogypsum, according to the Complaint, is "radioactive due to the presence of naturally occurring uranium and

---

[6] The plaintiffs also claimed the chemical wastes caused, *inter alia*, paralysis, convulsions, cancer, hypertension, respiratory difficulties, and impaired organ function. *Reilly Tar*, 546 F. Supp. at 1106.

thorium, and their daughter isotopes radium, radon, polonium, etc." *Id*. at 7. It may be susceptible to "inhalation" and "ingestion by the public," and it "may continue to migrate through soil, surface water, and groundwater." *Id*. at 9. Consequently, phosphogypsum is "potentially injurious to health and/or the environment." *Id*. Because phosphogypsum is in the soil and groundwater, Plaintiffs contend "it is scientifically and technologically infeasible to apportion the resulting single indivisible harm and potential endangerment to health and the environment," and the "single, indivisible harm and endangerment to health and the environment" cannot "be abated or remediated…without addressing the entire [p]hosphogypsum, hazardous substances, hazardous waste and/or solid waste contamination." *Id*. at 10. Plaintiffs, as summarized above and further detailed in the Complaint, sufficiently allege an imminent endangerment to health or the environment.

**(2)   Substantial Endangerment**

Defendant also argues Plaintiffs' RCRA claim should be dismissed because they do not allege a "serious" or "great" "potential for harm." Doc. 10 at 14-15.[7] Plaintiffs aver phosphogypsum, which is purportedly toxic and radioactive, hazardous substances, and/or solid waste, which were discharged by Defendant at the site, "have been detected in soil, groundwater and surface water at and in the vicinity of the [s]ite." Doc. 1 at 7-8. These substances, according to Plaintiffs, may be susceptible to inhalation" or "ingestion by the public," and thus, present "an imminent and substantial endangerment to health or the environment." Doc. 1 at 9. Assuming these allegations are true, which the Court must do, Plaintiffs sufficiently plead a substantial

---

[7] Defendant also contends Plaintiffs do not allege "a substantial statistical probability that disease will result from the presence of contaminants in the drinking water." Doc. 10 at 14. In support, Defendant cites *Reilly Tar*. *Id*. But the language cited by Defendant is not from the District of Minnesota's opinion; instead, the quote is pulled from a House of Representatives report. *See Reilly Tar*, 546 F. Supp. at 1110 (quoting H.R. Rep. No. 1185, 93rd Cong., 2d Sess. 35-36)). Defendant cites no legal authority establishing Plaintiffs must allege a substantial statistical probability that disease will result from phosphogypsum in the ground and groundwater.

endangerment. Moreover, the Court acknowledges whether a substantial and imminent danger exists is a question of fact. *See Substation K, Inc. v. Kan. City Power & Light Co.*, No. 19-00031-CV-W-SRB, 2020 WL 3039127, at *4 (W.D. Mo. June 5, 2020) (citations omitted). Thus, this issue is not appropriately resolved in a motion to dismiss for failure to state a claim.[8]

**B.    CERCLA**

In 1980, CERCLA was enacted "in an effort to eliminate unsafe hazardous waste sites." *Aceto Agr. Chems. Corp.*, 872 F.2d at 1377. It "generally provides a cause of action to a private person seeking relief from another person who has caused a 'hazardous substance' to pollute an area." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153-54 (8th Cir. 1999) (citing 42 U.S.C. § 9601(14), 9607(a), 9659(a)(1)). To establish a prima facie case of liability under CERCLA, Plaintiffs must show (1) Defendant is a "facility," (2) a "release or "threatened release" of a "hazardous substance" from Defendant has occurred, (3) the release or threatened release caused Plaintiffs to incur response costs, and (4) Defendant falls within one of four classes of responsible persons as set forth in 42 U.S.C. § 9607(a). *Aceto Agr. Chems. Corp.*. 872 F.2d at 1378 (citation omitted). Defendant moves to dismiss Plaintiffs' CERCLA claims because (1) phosphogypsum is not a hazardous substance under CERCLA, and (2) Plaintiffs have not incurred any response costs. Doc. 10 at 9, 16-19. Because Defendant focuses on the second and third elements of a prima facie case under CERCLA, the Court does the same.

---

[8] In its motion, Defendant raises an additional argument as to why "there can be no substantial endangerment." Doc. 10 at 15-16. Defendant argues Plaintiffs, as FI's successors, agreed to assume all environmental liabilities associated with the site, and any endangerment "must be addressed by Plaintiffs." Doc. 10 at 15-16. This argument, as best the Court can discern, is not relevant to whether Plaintiffs sufficiently pleaded a cause of action. Instead, it appears to be an argument more appropriately raised outside of the confines of a Rule 12(b)(6) motion. Therefore, the Court does not address this argument at this time.

### (1) Hazardous Substance

The parties seem to agree "phosphogypsum" is not listed as a hazardous substance under CERCLA. *See* Doc. 10 at 17; Doc. 13 at 15-17; Doc. 16 at 7. The Court agrees "phosphogypsum" is not listed in Appendix A to 40 C.F.R. § 302.4. However, Plaintiffs' Complaint defines phosphogypsum as "all components of the generated gypsum slurry waste including acidic wastewater, phosphogypsum, radioactive material, cadmium, fluoride, iron, lead, phosphorous,[9] zinc and other contaminants." Doc. 1 at 7. Cadmium, lead, phosphorus, and zinc are listed as hazardous wastes under CERCLA. Appendix A to 40 C.F.R. § 302.4 (Nos. 7439-92-1 (lead), 7440-43-9 (cadmium), 7440-66-6 (zinc), and 7723-14-1 (phosphorus)). Accepting all factual averments as true and drawing all reasonable inferences in Plaintiffs' favor, the Court finds Plaintiffs plausibly allege Defendant released a hazardous substance under CERCLA.

### (2) Response Costs

Defendant argues Plaintiffs' CERCLA claim should be dismissed because they do not allege they incurred costs of response or cleanup at the site. Doc. 10 at 18-19. Plaintiffs aver they "have incurred Response Costs all of which were, at all times, necessary and consistent with the N[ational] C[ontingency] P[lan]."[10] Doc. 1 at 14. The Complaint defines Response Costs as "the costs of response incurred and paid by FIMRT to address MFA's disposal, release and threatened release of [p]hosphogypsum…" and "the costs of response **incurred and paid by SCD** to address

---

[9] Plaintiffs identified phosphorous, not phosphorus. The Court, when construing all inferences in favor of Plaintiffs, presumes Plaintiffs meant "phosphorus." *See* Doc. 1 at 7; *Braden*, 588 F.3d at 595 (noting all inferences must be considered in the light most favorable to the non-moving party). Phosphorous is an adjective meaning "of, resembling, or containing phosphorus." Phosphorous, Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/phosphorous (last visited July 21, 2022).

[10] The Complaint defines NCP as "the National Oil and Hazardous Substance Pollution Contingency Plan as set forth in 40 C.F.R. Part 300." Doc. 1 at 6-7.

MFA's disposal, release and threatened release of [p]hosphogypsum…." Doc. 1 at 7 (emphasis added). The foregoing allegations sufficiently plead the response costs incurred by Plaintiffs.

Defendant points out that Plaintiffs allege FIMRT incurred "approximately $7.75 million in response costs, and Plaintiffs seek reimbursement of $7,765,134 for response costs. Doc. 16 at 8 (citing Doc. 1 at 3-4, 15). Without "further detail from Plaintiffs," Defendant contends it must assume the amount of the requested reimbursement is the amount incurred by FIMRT, not Plaintiffs. *Id*. At this juncture, though, the Court cannot make assumptions in Defendant's favor.

**C.     Declaratory Judgment**

Defendant also seeks dismissal of the declaratory relief sought by Plaintiff. Doc. 9 at 1; Doc. 10 at 6. Although no specific argument is set forth in its motion, Defendant's reply asserts Plaintiffs' claim for declaratory relief fails for the same reasons their claim under CERCLA fails. Doc. 16 at 8. The Court rejects that argument as explained *supra*, section III(B).

### IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

DATE: July 21, 2022                               */s/ W. Brian Gaddy*
                                                                    W. BRIAN GADDY
                                                                    UNITED STATES MAGISTRATE JUDGE